UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ERIKA L. COX,<br><br>　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　Defendant. | Case No. 1:24-CV-372-CCB-SJF |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Erika L. Cox's appeal of the Social Security Administration's Decision dated February 16, 2024 (the "Decision") which found that Cox's disability ended on September 28, 2022, terminating her disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be affirmed.

## ANALYSIS

### A. Standard of Review

A person with a disability that prevents her from working may apply to the Social Security Administration for disability benefits. 42 U.S.C. § 423(b). Once the Social Security Administration has determined that a person is disabled and entitled to benefits, her disability status may be periodically reviewed. 20 C.F.R. § 404.1594(a). During that review, an ALJ compares the severity of the claimant's medical

impairments at present to the severity of the claimant's medical impairments when she was last determined to be disabled. 20 C.F.R. § 404.1594(b)(7). This most recent favorable determination of disability is the comparison point decision ("CPD"). If the claimant has experienced medical improvement related to her ability to engage in work since the CPD, the ALJ may find that the claimant is no longer disabled and thus no longer entitled to benefits. *See* 42 U.S.C. § 423(f).

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. But that review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the

evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, she "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the Court that he "considered the important evidence" and allow the Court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

### B. Procedural Background

Cox first applied for Social Security disability insurance benefits on May 24, 2019. (R. 233–37). She identified her disability onset date as December 14, 2018. (R. 233). On November 16, 2020, an ALJ granted her claim. (R. 100–08). After a continuing disability review, Cox was found no longer disabled due to medical improvement as of September 28, 2022. (R. 112–19). Cox challenged the determination on October 28, 2022, and the Social Security Administration affirmed its revocation of benefits on February 13, 2023. (R. 154–58). Cox requested a hearing, which was held on January 18, 2024. (R. 45). The ALJ issued an unfavorable decision on February 16, 2024. (R. 15–37). The Appeals Council denied Cox's request for review, and this appeal followed. (R. 1).

## C. The ALJ's Decision

To determine whether a claimant continues to be disabled, the ALJ conducts an eight-step inquiry. 20 C.F.R. § 404.1594(f). The inquiry seeks to determine (1) whether the claimant is engaging in substantial gainful activity; (2) if not engaged in gainful activity, whether the claimant has an impairment or combination of impairments either listed in the regulations or equal to the severity of impairments listed in the regulations; (3) if the claimant's impairments do not meet a listing, whether there has been medical improvement in the impairments; (4) if there has been medical improvement, whether that medical improvement is related to the claimant's ability to do work; (5) if there has been no medical improvement or no medical improvement related to the claimant's ability to do work, whether an exception to medical improvement applies; (6) if either there is medical improvement related to the claimant's ability to do work or an exception listed at 20 C.F.R. § 404.1594(d) applies, whether the claimant has a severe impairment; (7) if the claimant has a severe impairment, whether the claimant has the residual functional capacity ("RFC") to perform past relevant work; and (8) if the claimant cannot perform past relevant work, whether the claimant can perform any other work that exists in the national economy.

Here, at step one, the ALJ found that Cox had not engaged in substantial gainful activity. (R. 20). At step two, the ALJ determined that since September 28, 2022, when the CPD was issued, Cox had experienced the following medically determinable impairments: hypermobile Ehlers-Danlos syndrome, recurrent subluxations of the right shoulder/right elbow epicondylitis, status-post biceps tendon tear, gastroparesis,

4

postural orthostatic tachycardia syndrome (POTS), chronic migraine headaches, asthma, obesity, major depressive disorder, unspecified anxiety disorder/general anxiety disorder, post-traumatic stress disorder (PTSD), adjustment disorder, and a specialized eating/feeding disorder. (R. 20–21). The ALJ found that these impairments, singly or in combination, did not match or equate to impairments listed in the regulations. (R. 21). At step three, the ALJ determined that Cox had experienced medical improvement as of September 28, 2022. (R. 24). At step four, the ALJ found that Cox's improvement was related to her ability to work. (*Id.*) The ALJ skipped step five, because Cox's medical improvement was related to Cox's ability to work, and proceeded to step six, where she determined that Cox's impairments were severe. (R. 24). At step seven, the ALJ determined that Cox's RFC permitted her to

> perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that [Cox] can occasionally balance, stoop, kneel, crouch and crawl; she can never climb ladders, ropes or scaffolds; she should avoid concentrated exposure to loud noise . . ., bright/flashing lights and hazards, including operational control of dangerous moving machinery, unprotected heights, slippery/uneven/moving surfaces; and she can frequently reach overhead, handle and finger with the right dominant upper extremity.

(R. 25). The ALJ also determined that Cox lacked the RFC to perform past relevant work. (R. 33). At step eight, the ALJ found that Cox had sufficient RFC to "perform a significant number of jobs in the national economy." (R. 35).

### D. Issues on Appeal

Cox requests remand to the Agency on two grounds. First, she contends that the ALJ created an evidentiary deficit by rejecting all available medical opinions. Second,

5

she contends that the ALJ conducted a patently wrong symptom evaluation. Neither ground avails.

### 1. The ALJ's Rejection of All Available Medical Opinions

Cox first objects to the ALJ's rejection of all available medical opinions related to Cox's physical impairments. The ALJ considered medical opinions from two state agency medical doctors, Drs. Corcoran and Sands; one consultative examiner, Dr. Roberts; and two of Cox's treating physicians, Drs. McPheron and De Guzman, before determining that all were unpersuasive. Cox argues that the ALJ's failure to find any of these opinions persuasive creates an evidentiary deficit rising to the level of legal error. She also challenges the ALJ's supportability and consistency analysis of the opinions of Cox's treating physicians, Drs. McPheron and Guzman. Both arguments fail.

This Court will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Substantial evidence is not a high bar. It requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). ALJs have a duty to consider the entire record when making disability determinations. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). But they are not required to "rely entirely on a particular physician's opinion or choose between the opinions" of the various physicians. *Id.* All that they must do to avoid reversal is adequately discuss the record and build a "logical bridge from the evidence to [their] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

6

The most important factors ALJs consider when assessing the persuasiveness of a medical source are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2). Supportability is the degree to which "objective medical evidence and supporting explanations" support the opinion of the medical source. 20 C.F.R. § 404.1520c(c)(1). Consistency is the degree to which the medical opinion is consistent with "evidence from other medical sources." 20 C.F.R. § 404.1520c(c)(2). The ALJ must articulate how she "considered the supportability and consistency factors for a medical source's medical opinion[]." 20 C.F.R. § 404.1520c(b)(2). But these articulation requirements are "minimal." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). If she has adequately discussed the reasoning for her conclusions such that this Court can assess their validity, she has done her job. *See id.* at 1053–54.

Cox contends that the ALJ's rejection of all medical opinions was legal error. Not so. ALJs must articulate the persuasiveness of each medical opinion, but they may not "defer" or "give any specific evidentiary weight" to "any medical opinion(s)." 20 C.F.R. § 404.1520c(a); *see also Schmidt*, 496 F.3d at 845 (finding that the ALJ's refusal to adopt the RFC of any medical opinion submitted was not error). Here, the ALJ assessed the opinion of each doctor and met her minimal articulation requirements by providing specific explanations for each persuasiveness finding. She found the opinions of the state agency medical doctors, Drs. Corcoran and Sands, unpersuasive because neither doctor examined Cox nor provided a "meaningful discussion or analysis of the medical evidence," and because their opinions were inconsistent with the overall medical record. (R. 29–30). She found the opinion of the consultative examiner, Dr. Roberts,

7

unpersuasive because he gave no supportive comments and failed to assess the most Cox could do physically, which was information necessary to the determination of Cox's RFC. (R. 30). And she found the opinions of Cox's treating physicians, Drs. McPheron and De Guzman, unpersuasive because they lacked a meaningful discussion of the medical evidence and seemed to rely solely on Cox's reports, reaching conclusions inconsistent with their own clinical findings. (R. 31). The ALJ did not need to accept the medical opinions of all or any of the medical sources. She was only required to consider them and articulate her determination of their persuasiveness. She met that low bar.

Cox also purports to argue that the ALJ failed to properly consider the supportability and consistency of the opinions of Cox's treating physicians, Drs. McPheron and De Guzman, when she determined that those opinions were unpersuasive. But instead of pointing out any failure to consider supportability and consistency, Cox uses most of her space to argue against the ALJ's conclusions regarding those factors. For instance, Cox suggests that the ALJ was wrong to look unfavorably upon Drs. McPheron and De Guzman's failure to discuss the medical evidence because the doctors checked boxes indicating what additional evidence they considered. And Cox objects to the ALJ taking issue with the doctors' lack of supportive comments because the regulations do not require such comments. These objections are precisely the kind of "flyspecking" of the ALJ's opinion that the Seventh Circuit has warned against. *Warnell*, 97 F.4th at 1053 (condemning the practice of "putting the ALJ's written decision under a microscope and then flyspecking it"). It is true that the ALJ

8

must articulate how she "considered the supportability and consistency factors for a medical source's medical opinion[]." 20 C.F.R. § 404.1520c(b)(2). But Cox does not identify any real omissions in the ALJ's articulation of supportability or consistency. Instead, she asks the Court to work through the ALJ's process from scratch and compare conclusions. That is not the role of this Court. *See Clifford*, 227 F.3d at 872 (finding that an ALJ need only articulate her reasoning to the point that a "reasonable mind might accept" her conclusions); *Warnell*, 97 F.4th at 1053 ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements."); *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("[Reviewing courts] review the ALJ's weighing of [medical] opinions for substantial evidence, and . . . only overturn that weighing if no reasonable mind could accept the ALJ's conclusion."). This argument fails.

### 2. The ALJ's Symptom Evaluation

Cox next objects to the ALJ's symptom evaluation. She claims that the ALJ failed to properly evaluate her chronic fatigue as required by the Social Security regulations, reaching a patently wrong conclusion that must be reversed. In support, Cox argues that the ALJ's three reasons for discounting Cox's chronic fatigue as "inconsistent with the record" were invalid. (R. 28). If Cox were correct that the ALJ failed to offer a single valid reason for her conclusion regarding Cox's chronic fatigue, the ALJ's decision would be "patently wrong," and this Court would be required to reverse and remand Cox's case. *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (citation omitted). But Cox is unable to show that any of the ALJ's reasons were invalid, much less all of them.

9

Once an ALJ finds that a claimant has a medically determinable impairment that "could reasonably be expected to produce" the claimant's symptoms, the ALJ "must then evaluate the intensity and persistence" of the claimant's symptoms so that the ALJ can determine how the claimant's symptoms limit her "capacity for work." 20 C.F.R. § 404.1529(c)(1). If the claimant's symptoms are consistent with "objective medical evidence and the other evidence of record," the ALJ will be more likely to determine that the symptoms reduce the claimant's RFC. S.S.R. 16-3P, 2017 WL 5180304, at *8. Conversely, if a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and other evidence," the ALJ will be less likely to determine that the symptoms reduce the claimant's RFC. *Id.* Upon appeal, this Court will uphold the ALJ's subjective symptoms evaluation "unless that determination is patently wrong." *Wilder*, 22 F.4th at 653 (citation omitted).[1] To be "patently wrong," the ALJ's decision must "lack[] any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008) (citation omitted). This Court will not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Id.* Remand on this ground is only appropriate if Cox can show that the ALJ could not offer even one valid reason for her conclusion in the subjective symptoms evaluation. *See Schrank v. Saul*, 843

---

[1] In *Wilder*, the Seventh Circuit uses the phrase "credibility determination" to refer to the subjective symptoms evaluation. 22 F.4th at 653. This is because the ALJ's assessment of a claimant's subjective symptoms was formerly referred to in the regulations as a credibility determination. *See* S.S.R. 16-3P at *2. Social Security regulations now use the phrase "subjective symptom evaluation" and emphasize that the inquiry does not examine the claimant's character but rather how closely their subjective symptoms track the other record evidence. *Id.*

10

F. App'x 786, 789 (7th Cir. 2021) (Reviewing courts will "not reverse [a] credibility determination as long as the ALJ provide[s] at least one reason to support the finding.") (citing *McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011) (finding that the ALJ only provided one valid reason for her credibility determination, but that single reason was sufficient to justify her decision)).

      Cox has failed to make that showing. The ALJ identifies three reasons for her conclusion that Cox's statements regarding her chronic fatigue were inconsistent with the record. First, Cox "was able to assist with moving boxes and cleaning" when she moved into a new house in January 2022. (R. 28) (citation omitted). Second, Cox went on a two-day vacation in 2022 to Cedar Point. (R. 28–29). Third, Cox was "able to lift weights and exercise regularly." (R. 29). Cox contends that the ALJ improperly treated these "snapshots[s]" of Cox's life as sufficient to discredit Cox's report of her fatigue. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (finding that a temporary "snapshot of any single moment" shows little about a claimant's "overall condition"). In support, she points to *Murphy v. Colvin*, where the Seventh Circuit held that the ALJ improperly relied on evidence of a claimant's "vacation" to conclude that the claimant was not as limited after a stroke as she alleged. 759 F.3d 811, 817 (7th Cir. 2014). But the claimant in *Murphy* may well have been "sunning herself on the beach while listening to smooth jazz," an activity not at all inconsistent with her symptoms of physical weakness and loss of sensation on her right side. *Id.* at 814, 817. Here, Cox complains of chronic fatigue, but all three activities the ALJ points to were physically demanding. Cox moved boxes and cleaned during a move, spent two full, active days at an amusement

11

park, and "regularly" lifted weights and exercised. (R. 28–29). These inconsistencies between Cox's reported symptoms and the record led the ALJ to conclude that Cox was "not as functionally limited" by her chronic fatigue as she alleged. (R. 28). The ALJ was required to explain how inconsistencies in the record affected her evaluation. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (finding that an ALJ must "explain[] the inconsistencies" between a claimant's activities and their reported symptoms). She did so. This Court will not "displace [her] judgment" by making an "independent credibility determination[]." *Elder*, 529 F.3d at 414 (citation omitted).

Cox also argues that the ALJ failed to confront Cox's hearing testimony that her fatigue impaired her ability to exercise as frequently as she wanted to. It is correct that the ALJ does not explicitly confront Cox's hearing testimony on this narrow point, but ALJs need not "address every piece or category of evidence identified by a claimant." *Warnell*, 97 F.4th at 1053. It is enough that they sufficiently articulate their logical steps so that a reviewing court may "trace the path" of their reasoning. *Carlson*, 999 F.2d at 181 (quoting *Stephens*, 766 F.2d at 287) (internal quotation marks omitted). Here, the ALJ pointed to multiple instances where the record indicated that Cox exercised regularly. *See* R. 29, 362, 534, 692, 1418, 1757, 1760, 1765. Furthermore, several of these record pages cited by the ALJ note that Cox has not always been able to exercise as frequently as she'd like, making it clear to the Court that the ALJ confronted this issue. *See* R. 1757, 1760, 1756. This is enough for the Court to trace the path of her reasoning. There is no basis for remand here.

## **CONCLUSION**

For the reasons set forth above, the Commissioner's Decision is **AFFIRMED**.

SO ORDERED on September 22, 2025.

                                               /s/*Cristal C. Brisco*
                                               CRISTAL C. BRISCO, JUDGE
                                               UNITED STATES DISTRICT COURT